**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | Case No. 2:94-cr-55 |
| v. : | |
| : | |
| : | |
| DOUGLAS S. MASON, : | |
| : | |
| Defendant. : | |

**Memorandum Opinion & Order:**
**Motion to Review Whether Defendant Served His Federal Sentence**

On May 15, 2012, Defendant Douglas Mason was scheduled to complete a term of state imprisonment and begin a period of federal supervised release. One day prior, the government filed an ex parte motion asking the Court to issue an arrest warrant for Mason and to review whether he had completed the incarcerative portion of his federal sentence. ECF No. 38. The government contends Mason should now be returned to the custody of the federal Bureau of Prisons ("BOP") as he failed to serve a thirty-six month federal sentence meant to run consecutively with his now-expiring Vermont sentence. Mason opposed the motion, as BOP credited him for serving his federal time while in federal custody between 2004 and 2007. ECF No. 46. The Court issued a warrant to detain Mason pending its review, ECF No. 40, and it held emergency hearings on May 18 and May 21, 2012, to compile a record on which to rule. At the conclusion

of the second hearing, the Court issued a ruling from the bench confirming that Mason has served his federal term of imprisonment and ordering him released. However, it stayed implementation of the order for two days to allow the parties to revise Mason's conditions of federal supervised release and to permit the government to decide whether to appeal. The Court, in this written opinion and order, now confirms that oral decision.

**Background**

In 1992, Mason was convicted of second degree murder by a Vermont court and sentenced to between fifteen and thirty years of state imprisonment. Based on good time calculations, Mason was scheduled to "max-out" on his sentence and earn release in 2012, after twenty years of incarceration. In 1995, after beginning to serve his time, Mason sent threatening letters to his state sentencing judge. The United States Attorney's Office obtained a writ of habeas corpus ad prosequendum for Mason to appear before this Court to face a charge for the federal crime of mailing a threatening communication. Mason entered a guilty plea, and Senior U.S. District Judge Lee P. Gagliardi sentenced Mason to 36 months in prison, to run consecutively to his state sentence, followed by three years of supervised release. *See* Gov't's Ex Parte Mot. Ex. 2, at 2-3, ECF No. 38-2. The Court remanded him to the custody of the U.S. Marshal for the District

of Vermont, who filed a detainer with the Northwest State Correctional Facility, where Mason had been confined prior to issuance of the writ of habeas corpus ad prosequendum. The detainer listed Mason's federal sentence, noting that it was to run consecutive to his state term. Two weeks later, the U.S. Marshal sent another letter to the superintendent of the same facility, notifying him that Mason was being returned to state custody following the federal sentencing. It too listed his federal sentence, also describing it as consecutive. It further read that "the U.S. Marshals Service will assume custody of the subject upon the completion of the state/local sentence."

In April 2004, Mason came up for review before the Vermont Parole Board ("VPB"). The "Case Assessment" summary before the VPB reviewing panel described that Mason had a federal detainer lodged against him "due to a 36 month consecutive Federal sentence." VPB granted Mason parole "[t]o a detainer, date to be fixed." Gov't's Supp'l Filing Ex. 1, ECF No. 44-1. On May 26, 2004, he executed a parole agreement that specified he was being "Paroled to Detainer/Federal" and imposed conditions of parole that were to extend until October 2012, at minimum, or August 2015, at maximum. Gov't's Supp'l Filing Ex. 2, ECF No. 44-2. The parole conditions included prohibitions ostensibly meant to apply to parolees released from incarceration, such as agreement not to leave the state of Vermont without permission,

3

to purchase alcohol or enter a place that sells it, or to operate a motor vehicle. *Id.* In June 2004, he was released to the U.S. Marshals who took him to FCI Allenwood in Pennsylvania.

Before Mason left for federal prison, on June 1, 2004, VPB sent the U.S. Marshals a one-page form entitled "Detainer-Notice of Action" in which a box was checked: "Notify this office of the time of release at least 30 days prior to release or as far in advance as possible." It sent a follow-up letter on September 16, 2004, clarifying that Mason's "parole supervision will need to be arranged upon his release, thus, the reason for this request." In October 2006, BOP responded to the "letter request[ing] notification" by informing VPB it was scheduled to release Mason on January 18, 2007, including a good time reduction. Gov't's Supp'l Filing Ex. 3, ECF No. 44-3.

One month later, VPB issued an arrest warrant for Mason on the ground that he had violated his parole agreement. Gov't's Supp'l Filing Ex. 4, ECF No. 44-4; *see* Vt. Stat. Ann. tit. 28, § 551 (conferring power on VPB to issue warrants for arrest of parolees on "reason to believe that a violation of parole has occurred"). Apparently, BOP acted on the warrant to return Mason to Vermont custody. Mason has now served approximately twenty years total in prison, with stints of about twelve and five years in state facilities surrounding his thirty-six month sentence in federal prison.

4

At the hearing, two officials from VPB and one official from the Vermont Department of Corrections ("VTDOC") testified. From their testimony emerged a bizarre back story to the facts recounted above. According to the two VPB officials' testimony, the pending federal detainer made Mason ineligible to participate in certain rehabilitative programs while in state custody. They claim it was for that reason VPB determined in 2004 to parole him into the custody of BOP, in the hopes it would "get rid of the detainer." In spite of the many references in the record to his federal sentence being consecutive, the officials testified they believed the parole would discharge Mason's federal sentence, allow VTDOC to "keep the clock running" on Mason's state sentence while he was in the federal facility, and subsequently permit Mason to return to finish the balance of his twenty year maximum term in state custody.

For those reasons, the VPB officials testified that the parole agreement Mason signed, with its extensive conditions of release and its 2015 maximum expiration date, was a mere formality. It was never their intent he serve any portion of his sentence outside of either a state or federal prison. In fact, the parole agreement was revoked as soon as Mason returned to state custody in 2007. They also freely admitted that the 2006 warrant that secured his return to state control was

5

defective.  VPB had no cause to believe Mason had violated any of his parole conditions.  It was intended only to prompt BOP to return him to state control.  In 2007 and 2009, when Mason sought parole again, VPB denied it.  He was also denied a furlough by VTDOC.  On May 15, 2012, Mason completed his maximum state sentence, with his time spent on parole in federal custody included in the calculation.

## Discussion

The parties do not dispute that, until the government's ex parte motion, VTDOC, VPB, and BOP considered that Mason would have completed his state sentence and his federal consecutive sentence of imprisonment on May 15, 2012.[1]  The government, however, argues VPB and VTDOC effectively treated Mason's time in federal custody as a concurrent sentence, running alongside his state term.  It urges the Court to return him to BOP custody to complete another thirty-six months in federal prison.  This case poses difficult questions.  In resolving them, however, the Court finds that evidence of VPB's true designs may not reverse the understanding under which all involved in Mason's case have to date operated.

---

[1] In addition, the U.S. Probation Office continued to act under that assumption through, at least, early this month. *See* Request for Modifying the Conditions or Terms of Supervision with Consent of the Offender, May 3, 2012, ECF No. 37.

Courts have long acknowledged that problems may arise in executing state and federal sentences pending against a single defendant. *See Ponzi v. Fessenden,* 258 U.S. 254, 259 (1922). Avoiding "embarrassing conflict" calls for "definite rules," *id.*, and foremost among them is "that the sovereignty which first arrests the individual acquires the right to prior and exclusive jurisdiction over him . . . and this plenary jurisdiction is not exhausted until there has been complete compliance with the terms of, and service of any sentence imposed by, the judgment of conviction entered against the individual by the courts of that first sovereignty." *In re Liberatore*, 574 F.2d 78, 89 (2d Cir. 1978) (internal citations omitted). Primary jurisdiction endures "until the first sovereign relinquishes its priority." *United States v. Smith*, 812 F. Supp. 368, 370 n.2 (E.D.N.Y. 1993); *see Roche v. Sizer,* 675 F.2d 507, 510 (2d Cir. 1982). A second clear standard is that a federal sentence "commences on the date the defendant is received in custody . . . at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

Here, Vermont acquired primary jurisdiction over Mason by charging and sentencing him first. Accordingly, he could not have started his federal sentence until Vermont relinquished its primary jurisdiction over him and conveyed him to federal authorities' custody. "Parole release to [a] Federal detainer"

accomplishes transfer of primary jurisdiction to begin the running of a consecutive federal sentence. *Dutton v. U.S. Attorney Gen.*, 713 F. Supp. 2d 194, 202 (W.D.N.Y. 2010); *see United States v. Cole*, 416 F.3d 894, 897 (8th Cir. 2005) ("Primary jurisdiction continues until the first sovereign relinquishes its priority in some way. Generally, a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence."); *Roche*, 675 F.2d at 510 (finding primary jurisdiction passed from federal to state authorities when defendant posted bond for his federal charges).[2] The meaning of parole in Vermont is consistent with that view. Parole "alters only the method and degree of confinement during the period of commitment," and not the length of a sentence. *State v. Bensh*, 719 A.2d 1155, 1156 (Vt. 1998); Vt. Stat. Ann. tit. 28, § 502a(c).[3] However, it is also a proper vehicle for transferring custody to a separate sovereign, as the definitional state statute provides: "If a court or other authority files a warrant or detainer against an inmate, the

---

[2] This contrasts with writs of habeas corpus ad prosequendum and ad testificandum, which only "loan" the prisoner to another sovereign. *In re Liberatore*, 574 F.2d at 89.

[3] In accord with that principle, VTDOC does not have the independent authority to exclude time compliantly spent on parole in determining satisfaction of a Vermont sentence. *See Miner v. Chater*, 403 A.2d 274, 278 (Vt. 1979).

board may release him or her on parole to answer the warrant and serve any subsequent sentences." Vt. Stat. Ann. tit. 28, § 402.

Whatever its calculation, VPB's decision to parole Mason pursuant to the federal detainer set in motion a transfer of primary jurisdiction from VTDOC to BOP. In *Stephens v. Sabol*, 539 F. Supp. 2d 489, 490-91 (D. Mass. 2008), Florida transferred a state prisoner to federal custody to serve a federal sentence in the mistaken belief his state sentence was complete. The Court held that the time the defendant spent in federal custody before the state realized its mistake and achieved the defendant's return should be credited to his federal sentence. *Id.* at 499. The Court noted "the 'expiration' of the petitioner's state sentence and the affirmative act of transferring him to federal authorities suffice[d]" to relinquish and convey primary jurisdiction. *Id.* at 495. Furthermore, it found that "[w]hen the federal authorities accepted Stephens, his sentence began to run by operation of statute, and not through any further discretionary act by a federal official." *Id.* at 499 (citing 18 U.S.C. § 3585(a)).

The Court finds the same reasoning controls here. VPB transferred primary jurisdiction over Mason in approving parole and executing his parole agreement, which specified that Mason be put in the custody of the federal government pursuant to the detainer. The detainer itself clearly states that it is in

furtherance of a thirty-six month consecutive sentence. VPB then released Mason into the custody of federal authorities. The U.S. Marshals Service discharged the detainer in June 2004, and BOP accepted Mason into custody to serve the sentence Judge Gagliardi imposed. Upon his release, in January 2007, it credited Mason for completion of his thirty-six month term, with good time included.

VPB's efforts to obtain Mason's eventual return do not change that result. Neither the June and September 2004 letters nor the November 2006 warrant were intended to secure Mason's release from federal custody prior to the completion of his federal sentence. Rather, the June and September 2004 letters merely requested Mason's projected release date, and the September letter only stated VPB was interested because "parole supervision will need to be arranged upon his release." VPB never expressed any desire to interrupt Mason's term in federal custody. The letters and the warrant underline the fact that BOP had obtained custody over Mason during the time he was in federal prison.

Furthermore, the government has not identified, and the Court has not found, any authority for the position that revocation of parole during service of a consecutive federal sentence, followed by return to state confinement, generally nullifies the federal term of incarceration. Adopting that

10

position would mean that any transfer of primary jurisdiction on parole to a detainer is conditional and subject to reversal at any point for a parole violation. That result seems at odds with the statutory requirement that a federal sentence starts when the inmate is received into custody. *See* 18 U.S.C. § 3585(a).

The Court shares the government's concern that VPB seems to have misconstrued Judge Gagliardi's sentence. Nonetheless, it declines to adopt and apply a rule that requires detailed inquiry into the intent of the transferring sovereign when it otherwise validly releases a prisoner into the federal government's custody and the federal government accepts him. Doing so would be in tension with the "bright line" rules that govern prisoner custody. *Stephens*, 539 F. Supp. 2d at 496. Additionally, it would require federal courts to sit in review of state parole decisions, when the power to waive exclusive control over an inmate "is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it." *Ponzi*, 258 U.S. at 260; *see also Oregon v. Ice*, 555 U.S. 160, 170 (2009) ("Beyond question, the authority of States over the administration of their criminal justice systems lies at the core of their sovereign status."). This conclusion is strengthened in the present case where the documents initiating the grant of parole

could not be clearer in transferring custody. *See, e.g.*, *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26 (2d Cir. 1988) (noting, in discussing the parol evidence rule of contract law, that "[i]n the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party to substitute his view of his obligations for those clearly stated." (internal quotations and citation omitted)); *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) ("Statutory analysis begins with the plain meaning of a statute."). The Court is all the more reluctant where the consequence of mistakenly reading state intent could result in "multiple *criminal* punishments for the same offense." *Hudson v. United States*, 522 U.S. 93, 99 (1997) (construing the Double Jeopardy Clause's prohibition on multiple punishment).

This case is hardly a study in effective, cooperative federalism, and decisions undoubtedly made in good faith have nonetheless led to a strange conclusion. However, it may well be difficult to foresee the many influences on a sentence that occur long after the sentencing court has passed judgment. *See Setser v. United States,* 132 S. Ct. 1463, 1473 (2012) ("There will often be late-onset facts that materially alter a prisoner's position and that make it difficult, or even impossible, to implement his sentence."). The Court is compelled to conclude that Mason completed his consecutive term

12

of federal imprisonment based on VPB's parole to the federal detainer and his serving time in federal prison.

This, however, does not mark the end of Mason's federal sentence.  Uncertainty over Mason's status has delayed development of a comprehensive plan for his three year term of supervised release.  The only conditions of release in his case are the ones imposed by Judge Gagliardi some twenty years ago.  With the agreement of the parties, the Court stays execution of its order for two days to permit development of modified conditions of release to reflect Mason's present condition.  Moreover, the government has agreed to the two day stay for the additional purpose of determining whether to appeal this decision to the Second Circuit.  The Court finds a stay warranted for that reason as well, given the unique legal questions presented.

In light of the foregoing, the Court hereby orders Mason be released from imprisonment to begin serving his term of supervised release, but stays its ruling for two days from May 21, 2012, the date its oral decision issued.

Dated at Burlington, in the District of Vermont, this 22nd day of May, 2012.

/s/William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge